UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23-CR-627-CDP ) |
| MALIK A. JONES, | ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Malik A. Jones, represented by defense counsel Raphael O. Morris II, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 (bank fraud) and 5 (aggravated identity theft) of the Indictment, the United States agrees to move for dismissal as to the defendant of Counts 2 – 3 (bank fraud), 4 (possession of stolen mail matter), and 6 (aggravated identity theft) at the time of sentencing. The United States further agrees that no further federal prosecution will be brought in

1

this District relative to the defendant's theft of mail and check fraud scheme using checks stolen from the mail between March 2022 and October 2023, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a forfeiture money judgment equal to the total amount of funds obtained as a result of the defendant's check fraud scheme.

3. **ELEMENTS:**

   a. **Count 1 (Bank Fraud)**

   As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

   *One*, the defendant knowingly executed a scheme to defraud a financial institution, as described in the Indictment;

   *Two*, the defendant did so with the intent to defraud; and

*Three*, the financial institution was insured by the National Credit Union Share Insurance Fund.

b. **Count 5 (Aggravated Identity Theft)**

As to Count 5, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly possessed or used a means of identification, specifically the routing and account number for a First Bank account in the name of Victims M.B. and S.B.;

*Two*, the defendant knew that the means of identification the defendant possessed or use belonged to another person;

*Three*, the defendant possessed or used the means of identification without lawful authority;

*Four*, the defendant knew that he possessed or used the means of identification without lawful authority; and

*Five*, the defendant possessed or used the means of identification during and in relation to the crime of bank fraud, as charged in Count 1 of the Indictment.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than March 2022, and continuing through at least October 2023, in the Eastern District of Missouri, the defendant Malik A. Jones participated in and executed a scheme to defraud financial institutions, and to obtain money owned by or under the custody and control

of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, through the deposit of forged and fraudulent checks stolen from the U.S. mail.

More specifically, Jones orchestrated a scheme to defraud financial institutions by fraudulently depositing stolen and fraudulent checks into various bank accounts and withdrawing the check funds as proceeds. As part of the scheme, Jones recruited individuals ("Account Holders") to provide debit cards, Personal Identification Numbers ("PINs"), and other banking information for bank accounts belonging those individuals at financial institutions, for the purpose of depositing fraudulent checks into those bank accounts. Jones recruited Account Holders using his Instagram account. Jones offered Account Holders a portion of the funds from the fraudulent checks deposited into their bank accounts in exchange for providing their debit cards, PINs, and other banking information. Jones also paid other individuals ("Recruiters") to recruit Account Holders for him and to provide him with their debit cards, PINs, and other bank information. Over the course of the scheme, Jones recruited and caused to be recruited dozens of Account Holders, including Individual C.W., who agreed to allow Jones to use their bank accounts as part of the scheme.

After recruiting Account Holders, Jones created forged and fraudulent checks payable to the Account Holders using stolen personal and business checks, which had been placed in U.S. Postal Service ("USPS') collection boxes by victims in St. Louis County and St. Louis City, Missouri. Jones either altered these stolen checks, changing the payee and amount payable from what was filled out by the victim who wrote or issued the check, or used these stolen checks to create counterfeit checks, drawn on the same bank accounts as checks that victims had placed in USPS collection boxes. Jones caused these forged and fraudulent checks to be made payable to

the Account Holders and in amounts typically ranging from a few thousand dollars to tens of thousands of dollars.

After creating these forged and fraudulent checks, Jones caused the checks to be deposited into Account Holders' bank accounts for the purpose of inflating the balances in these accounts. In each instance, Jones either deposited the check himself, using the debit card and PIN provided by an Account Holder, or directed the Account Holder or Recruiter to conduct the deposit. These deposits occurred at ATMs and bank branches in St. Louis County or St. Louis City, Missouri. Once funds were made available, but before the financial institution determined the check was fraudulent, Jones withdrew the proceeds from the Account Holders' bank account himself or instructed the Account Holder or Recruiter to withdraw the proceeds, usually through cash withdrawals. On numerous occasions, bank surveillance footage captured Jones, driving a silver Mercedes sedan registered in Missouri in his name, conducting deposits of these forged and fraudulent checks and cash withdrawals after these deposits. After obtaining proceeds from a forged and fraudulent check, Jones then split the proceeds with the Account Holder and/or Recruiter.

Jones obtained the stolen checks, used to create the checks deposited in Account Holders' bank accounts, in multiple ways. In approximately March 2022, Jones paid C.H., a USPS employee, money in exchange for an arrow key used to open USPS collection boxes. Jones then paid others to steal mail using the arrow key he purchased from C.H. and removed checks from that stolen mail. Jones also paid C.H. money in exchange for C.H. stealing checks from the mail and providing them to Jones.

During the scheme, Jones and other participants documented the scheme by taking photos of stolen checks, altered and counterfeit checks, and ATM receipts from the deposit of altered and

counterfeit checks. Jones sent these photos to and received them from Account Holders and Recruiters on Instagram. Jones also posted these photos to a channel on the messaging application Telegram where users discussed the check fraud scheme, bought and sold stolen checks, and recruited Account Holders. Investigators reviewed Jones' Instagram messages and Telegram channel over the course of the scheme and identified photos depicting receipts from the deposit of altered and counterfeit checks totaling $1,187,509.85.

As to Count 1, on April 12, 2023, for the purpose of executing the scheme, Jones deposited at a Neighbors Credit Union branch in Jennings, Missouri a forged and fraudulent check, drawn on First Bank account #xxxxxx9997 in the name of Victims M.B. and S.B. and altered to be made payable to Individual C.W. in the amount of $4,236.60, into Individual C.W.'s Neighbors Credit Union account #xxx9548, for the purpose of obtaining money under the custody and control of Neighbors Credit Union. The accounts of Neighbors Credit Union are insured by the National Credit Union Share Insurance Fund, and Neighbors Credit Union was a financial institution within the meaning of Title 18, United States Code, Section 20.

As to Count 5, on April 12, 2023, Jones possessed and used the routing and account number for First Bank account #xxxxxx9997 in the names of Victims M.B. and S.B., which was located on the stolen, forged, and fraudulent check that Jones deposited into the Neighbors Credit Union account of Individual C.W. When possessing and using this routing and account number, Jones knew that it belonged to Victims M.B. and S.B., that Victims M.B. and S.B. were real persons, that he was using the routing and account number without the knowledge or authorization of Victims M.B. and S.B., and that he was using it for an illegal purpose.

In total, over the course of his fraud scheme, Jones deposited or caused the deposit of at least $1,207,675.45 worth of forged and fraudulent checks into Account Holders' bank accounts.

As a result of the deposit of these forged and fraudulent checks, Jones obtained at least $5,807.98 in proceeds.

5. **STATUTORY PENALTIES:**

   a. **Count 1 (Bank Fraud)**

   The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count 1 is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

   b. **Count 5 (Aggravated Identity Theft)**

   The defendant fully understands that the penalty provided by law for the crime to which the defendant is pleading guilty under Count 5 is a term of imprisonment of 2 years, and that this term of imprisonment shall not run concurrently with any other term of imprisonment imposed.

6. **U.S. SENTENCING GUIDELINES (2023 MANUAL):**

   The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

   a. **Chapter 2 Offense Conduct (Count 1):**

   (1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

   (2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 14 levels should be added pursuant to Section 2B1.1(b)(1)(H), because the loss exceeds $550,000, but does not exceed $1,500,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(2)(A), because the offense involved 10 or more victims.

b. **Chapter 3 and 4 Adjustments (Count 1):**

(1) **Aggravating Role:** The parties agree that 4 levels should added pursuant to Section 3B1.1(a), because the defendant was a leader or organizer and the criminal activity involved five or more participants

(2) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(3) **Adjustment for Certain Zero-Point Offenders:** The parties agree that the defendant will not receive a two-level reduction under Section 4C1.1(a) irrespective of the Court's

8

criminal history calculation because the defendant should receive an aggravating role adjustment, pursuant to Section 4C1.1(a)(10).

**(4) Other Adjustments:** The parties agree that the following additional adjustments apply: none.

**c. Estimated Total Offense Level (Count 1):** The parties estimate that the Total Offense Level is 24.

**d. Aggravated Identity Theft (Count 5):** As to Count 5, the parties agree that the Guideline sentence is the term of imprisonment required by 18 U.S.C. § 1028A, pursuant to Section 2B1.6.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

  b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

  d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will

11

be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $5,807.98, which represents the amount of funds obtained as a result of the defendant's offense. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government

and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all

possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/25/24
Date

JONATHAN A. CLOW
Assistant United States Attorney

10/25/24
Date

MALIK A. JONES
Defendant

10/25/24
Date

RAPHAEL O. MORRIS II
Attorney for Defendant